**MILLER v. UNITED STATES.**

No. 11958.

Circuit Court of Appeals, Eighth Circuit.

Oct. 21, 1943.

Writ of Certiorari Denied Jan. 3, 1944.

See 64 S.Ct. 429.

Ben Shaver and Bert B. Larey, both of Texarkana, Ark., for appellant, Jessie William Miller.

Clinton R. Barry, U. S. Atty., of Ft. Smith, Ark., for appellee, United States.

Before WOODROUGH, THOMAS and JOHNSEN, Circuit Judges.

THOMAS, Circuit Judge.

At this time the only question presented in this case is whether there was evidence to support appellant's conviction. All other questions heretofore submitted have been determined.[1] He was indicted, tried and convicted for the crime of kidnaping under the Lindbergh Law, 18 U.S.C.A. § 408a, Act of June 22, 1932, as amended by the Act of May 18, 1934, Ch. 301, 48 Stat. 781.

The pertinent part of the statute reads: "Whoever shall knowingly transport or cause to be transported, or aid or abet in transporting, in interstate or foreign commerce, any person who shall have been unlawfully seized, confined, inveigled, decoyed, kidnaped, abducted, or carried away by any means whatsoever and held for ransom or reward or otherwise * * * shall, upon conviction, be punished * * *."

The indictment charged that the appellant and his wife, Artilla Miller, kidnaped and abducted Dorthie Crawford Garner, then residing near DeQueen, Arkansas, by falsely representing to her that her grandfather, residing near Trenton, Texas, was seriously ill and wanted to see her; that defendants thereby persuaded Dorthie to accompany them from DeQueen to a point near McKinney, Texas, for the purpose of forcing her to labor for them; and that they forced her by means of threats and beatings to continue in servitude against her will from August 28, 1939, until February 29, 1940, when she escaped.

The reporter who took the stenographic notes of the testimony adduced at the trial has furnished the appellant without cost a complete transcript of his notes, and a bill of exceptions consisting of 682 typewritten pages has been certified and filed.

The record shows that at the close of the evidence the appellant moved for a directed verdict on the ground that there was no substantial evidence of guilt. The court overruled the motion; and an exception thereto is the basis of this appeal. The indictment is not assailed; and there is no question about the transportation in interstate commerce. The appellant admitted that he carried Dorthie (called Dorothy in the testimony and hereinafter) in his automobile from Arkansas into Texas. The controversy is whether he unlawfully decoyed her away from her home and forced her to work in Texas.

In reviewing, on appeal, after a verdict of guilty has been returned by the jury an order overruling a motion for a directed verdict, we are required to consider the evidence in its aspect most favorable to the government. Walker v. United States, 8 Cir., 93 F.2d 383, 392, certiorari denied 303 U.S. 644, 58 S.Ct. 642, 82 L.Ed. 1103; Firotto v. United States, 8 Cir., 124 F.2d 532, 533; Culp v. United States, 8 Cir., 131 F.2d 93, 100. We neither weigh the conflicting evidence nor consider the denials of the defendant. Burton v. United States, 202 U.S. 344, 26 S.Ct. 688, 50 L.Ed. 1057, 6 Ann.Cas. 362.

The evidence discloses that Dorothy Crawford Garner is the illegitimate daughter of Artilla Crawford Miller. When Dorothy was about 18 months of age her mother married the appellant, Jessie William Miller. Dorothy was reared in the home of her grandfather at Trenton, Texas, except for a period of four years when she was at an orphans' home. In September, 1936, when Dorothy was 14 or 15 years of age she, with the consent of her mother, married Will Garner. Thereafter she lived with her husband on a farm about seven miles from DeQueen, Arkansas, at which place she was residing in

[1] For a history of the proceedings, see Miller v. United States, 8 Cir., 123 F.2d 715; Miller v. United States, 8 Cir., 124 F.2d 840; Miller v. United States, 8 Cir., 126 F.2d 462; Miller v. United States, 316 U.S. 658, 62 S.Ct. 1307, 86 L.Ed. 1736; Miller v. United States, 317 U.S. 192, 713, 63 S.Ct. 187, 87 L.Ed. ——.

August, 1939. At that time she had a baby a little less than a year old. In the early summer of that year she had visited her grandfather, who was then ill, at his home in Trenton, Texas.

Artilla Miller and the appellant with their three children lived in Texas. Their only home was an automobile and trailer. During the cotton picking seasons of 1937, 1938, and 1939, they went about from farm to farm picking cotton on contract at about 60 to 65 cents per hundred weight. In the latter part of the month of August, 1939, the appellant Miller had procured one or more contracts with farmers to pick cotton. On the evening of August 27th appellant with his wife and children left the trailer at a farm on which he had a contract to pick cotton near McKinney, Texas, and drove in his automobile approximately 200 miles to the home of Dorothy Garner in Arkansas, where they arrived about 4:00 o'clock on the morning of August 28th.

■ The first contention of the appellant is that the evidence of what occurred upon their arrival is insufficient to support the verdict of the jury that appellant decoyed or inveigled Dorothy, or aided or abetted in decoying Dorothy, to return to Texas with them. Upon this point there is the testimony only of Dorothy and her husband, Will Garner, and of the appellant and his wife Artilla. Their testimony is consistent that upon the arrival of the automobile in front of the house the Garners were not up and that it was still dark. Miller sounded the horn on his car, and a light soon appeared in the house. Artilla went immediately into the house and the appellant followed at a distance of 50 to 75 feet behind her. Dorothy testified on direct:

"Q. How did you come to leave with them? A. My mother said that my grandfather was on his death bed and wanted to see me.

"Q. Was Jessie William Miller present when she told you that? A. He was in the car and came in the house.

"On cross: Q. They (Mr. and Mrs. Miller) came in the house. Both of them? A. She came in first and then afterwhile he came in.

"Q. When she came in the house, what did she say? A. She started talking about my grandfather, and I asked her was he real bad, and she said, 'Yes, he is on his death bed.'"

Will Garner testified: Artilla Miller came in first and she stated the story to Dorothy that her grandfather was in very bad condition and was expected to die any minute and it was his request that they come and get her. Artilla Miller said they had the only car available to make the trip at the time and that they just tore right out and came up there. Jessie came in later and verified the grandfather's condition and that he wanted to see Dorothy.

The Millers did not deny these facts in any material respect, but they gave an explanation of their conduct inconsistent with guilt. The jury was not required to believe their explanation, however. All agreed that within thirty minutes Dorothy with her baby and a little bundle of clothes started with the Millers in their car back to Texas.

In connection with the charge that appellant aided and abetted in abducting Dorothy the jury was authorized to consider all the relevant testimony in evidence, such as that the grandfather was not on his death bed, that he had not sent for Dorothy, that appellant went after her and carried her away in his automobile, and his purpose in so doing.

The evidence being substantial and in conflict, the question whether appellant enticed Dorothy, or aided and abetted in enticing her, to accompany him from Arkansas to Texas was properly submitted to the jury.

■ Appellant's motive for inducing Dorothy to go with him to Texas is shown by subsequent events. Upon their return to Texas appellant did not take Dorothy to Trenton to see her grandfather but stopped near McKinney at the farm where the trailer had been left the preceding evening. Appellant then told her that she was not being taken to see her grandfather but to the cotton patch. The evidence abundantly supports the verdict that from that day in August, 1939, until Dorothy escaped and returned to Arkansas on the last day of February, 1940, the appellant kept her in servitude by force and fear. He compelled her to pick cotton, carry water, chop wood and do other labor by frequent beatings and by threats to kill her if she wrote to her husband, talked to any one about her situation, or attempted to run away. For his cruelty to her Miller was arrested twice by state officials but was not tried because Dorothy feared and refused

to testify against him. His cruelty was so great that during the time she was with him she lost weight, became poor and emaciated, was afflicted with sores and bruises, became filthy in person, and was almost naked. Finally, on the last day of February, 1940, when he was beating her with a stick of wood, she held up her arm to ward off a blow and her arm was broken. This occurred in the morning, and when appellant and Dorothy's mother left the premises Dorothy took her baby and hitchhiked back to Arkansas where she received medical aid and renewed her life at home with her husband. During the entire period that appellant thus compelled Dorothy to labor in the cotton fields and the woods, he collected and kept her wages; and when he discovered her absence he followed her as far as Durant in Texas where he abandoned the chase.

Errors are assigned in this court for refusal to give certain instructions requested by appellant; but these assignments are not argued. We have examined the requested instructions, however, and find that the alleged errors are without merit. In so far as the requests correctly stated the law they are fully covered by the instructions given by the court.

The judgment of the court should be and it is affirmed.