Doyle Francis DAVIDSON, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 17060.

United States Court of Appeals
Eighth Circuit.

Jan. 21, 1963.

---

James J. McGannon, Kansas City, Mo.,
for appellant.

F. Russell Millin, U. S. Atty., Kansas
City, Mo., and John L. Kapnistos, Asst.
U. S. Atty., for appellee.

Before SANBORN, VAN OOSTER-
HOUT and MATTHES, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal in forma pauperis
from a judgment of conviction and a
sentence of ten years' imprisonment
based upon the verdict of a jury find-
ing the defendant (appellant) guilty of
a violation of the Federal Kidnaping
Act, 18 U.S.C. § 1201,[1] under an indict-
ment filed September 29, 1961.[2]

---

1. "§ 1201.
"(a) Whoever knowingly transports in
interstate or foreign commerce, any per-
son who has been unlawfuly seized, con-
fined, inveigled, decoyed, kidnaped, ab-
ducted, or carried away and held for
ransom or reward or otherwise, except,
in the case of a minor, by a parent there-
of, shall be punished (1) by death if the
kidnaped person has not been liberated

unharmed, and if the verdict of the jury
shall so recommend, or (2) by imprison-
ment for any term of years or for life,
if the death penalty is not imposed."

2.                    "INDICTMENT
"The Grand Jury charges:
"That on or about April 29, 1961, in
the Western Division of the Western
District of Missouri, Doyle Francis Da-
vidson did unlawfully, wilfully, knowingly

Upon arraignment on October 20, 1961, the defendant entered his plea of not guilty. The trial of the case commenced December 6, 1961. Throughout the trial and since his conviction, the defendant has been ably represented by Mr. James J. McGannon, of the Kansas City, Missouri, Bar, who was appointed by the District Court. We are indebted to him for his briefing of this case on behalf of the defendant.

The defendant, a 45-year-old man, a welder by trade, on Saturday, April 29, 1961, while in Kansas City, Missouri, near Mulkey Park, enticed a six-year-old girl to get into his automobile and to accompany him while he drove to Kansas City, Kansas, and back. The Government claimed, and its evidence tended to prove, that, at some unknown time and at some unknown place during the drive, he molested the child sexually.

The explanation of the defendant for taking the girl with him without the knowledge or consent of her parents was that he had been drinking heavily; that he was looking for a baby sitter for a four-year-old son of his estranged wife, with whom he was intending to discuss divorce; that the six-year-old girl, who had been playing with other children in Mulkey Park, across the street from where she lived, came to his automobile and volunteered to be a baby sitter; that he gave her some money; that she got into the car and accompanied him on his drive to Kansas City, Kansas; and that he returned her to her father in the afternoon of that same day. He denied having molested her in any way or having restrained her from leaving him or his car at any time she chose.

Counsel for the defendant in his brief has stated the pertinent facts and outlined the evidence adduced at the trial, with commendable accuracy and fairness.

The defendant was arrested by the Kansas City, Missouri, police when he brought the girl back on April 29. He was held by them over Sunday, April 30, on suspicion of molestation. On Monday, May 1, about 11 A.M., he was interviewed by Agents of the Federal Bureau of Investigation, and gave them a statement.[3] He was taken before a United States Commissioner the afternoon of the same day.

and feloniously transport in interstate commerce from Kansas City, Missouri, to Kansas City, Kansas, one Marilyn Anita Ashley, who had theretofore been unlawfully seized, confined, inveigled, decoyed, kidnapped, abducted and carried away, and held for ransom, reward and otherwise, to wit, sexual molestation, that the said Marilyn Anita Ashley, a minor, was liberated unharmed, in violation of Section 1201(a), Title 18, United States Code. * * *"

3. "Kansas City, Missouri, May 1, 1961. "I, Doyle Francis Davidson, make the following voluntary statement to Thomas Peter McHugh and George T. Binney, who have identified themselves to me as Special Agents of the Federal Bureau of Investigation. I have been advised of my right to an attorney. I have also been advised that I do not have to make a statement, and that any statement I do make can be used against me in a court of law. No threats or promises have been made, and this statement is voluntary.

"I am forty-five years of age, having been born April 4, 1917, at Piggott, Arkansas.

"On April 29, 1961, I drove my car, a 1950 white over green Nash sedan, to the vicinity of Twelfth Street and Summit, where I observed some children playing on the side of the road near a park across the street from the Seven Eleven Club. I stopped my car and a little boy and a little girl came up to the car. I asked the little boy and the little girl if they knew where I could get a babysitter. The little girl spoke up and said, 'I have babysat before. I will babysit for you.' I wanted to have a babysitter to sit with the son, age approximately three or four years, of my wife, Juanita Thompson Davidson, from whom I have been separated for approximately one year.

"I don't know Juanita's address, except she lives in the vicinity of Twelfth Street and Summit or Pennsylvania in Kansas City, Missouri. I wanted to look for Juanita, to talk with her about getting a divorce and settling our marriage problem.

"I took the little girl from the park into my car. She got in herself. The little boy opened the car door for her. I drove with the little girl around the vicinity of Summit and Broadway between Eighth

The judgment appealed from is challenged upon the following grounds: (1) that the indictment fails to state a federal offense; (2) that there is an inadequate evidentiary basis for the jury's verdict; (3) that the offense charged to the defendant does not come within the coverage of the Federal Kidnaping Act; (4) that it was error to admit in evidence the statement given by the defendant to the agents of the Federal Bureau of Investigation; and (5) that the right of the defendant to a speedy trial, guaranteed by the Sixth Amendment of the Constitution, was violated.

■ We think the indictment sufficiently charged the defendant with a violation of the Federal Kidnaping Act. See and compare, Dawson v. United States, 9 Cir., 292 F.2d 365, 366; Hayes v. United States, 8 Cir., 296 F.2d 657, 665–667. In Hewitt v. United States, 8 Cir., 110 F.2d 1, 6 (cert. denied 310 U.S. 641, 60 S.Ct. 1089, 84 L.Ed. 1409), this Court said:

"The sufficiency of an indictment should be judged by practical, and not by technical, considerations. It is nothing but the formal charge upon which an accused is brought to trial. An indictment which fairly informs the accused of the charge which he is required to meet and which is sufficiently specific to avoid the danger of his again being prosecuted for the same offense should be held good."

See, also, Smith v. United States, 360 U.S. 1, 9, 79 S.Ct. 991, 996, 3 L.Ed.2d 1041 and cases cited.

■ There was an adequate evidentiary basis for the verdict of the jury if what the Government's evidence showed the defendant had done in enticing, transporting and molesting the child constituted a violation of the Act. Counsel for the defendant believes that, giving to the Government the benefit of all favorable evidence and inferences, it failed to establish that the defendant was guilty of an offense within the intended coverage of the Act. There was adequate direct evidence of inveiglement of the child and of her interstate transportation, and sufficient circumstantial evidence of her molestation, to make the question whether the defendant had done what the Government charged a question for the jury.

Street west and Twelfth Street west. The little girl did not get out of my car until I brought her back to the vicinity of where I picked her up. I remember making one stop to buy the little girl some ice cream in a cup. I do not recall where I bought the ice cream. The little girl remained in the car when I bought the ice cream. That is the only ice cream I bought that day that I can recall. I do recall giving the little girl one dollar bill and fifty cents in change before she got in the car. She gave some of the change to the little boy before I drove off with her. I don't recall going across the state line to Kansas City, Kansas, with the girl in the car.

"Sometime during the afternoon of the same day I drove to the Silver Dime Cafe in the vicinity of Seventh Street on Central, Kansas City, Kansas.

"I don't remember if anybody was with me at that time. I had been drinking heavy all morning. While at the Silver Dime Cafe I borrowed five dollars from the girl who works there. Her name is Audrey. I don't remember buying any ice cream at the Silver Dime Cafe at the time I borrowed the money from Audrey.

"It was afternoon when I picked up the little girl at the park, and she was in my car thirty minutes to an hour when I took her back to the park. As I drove her back to the park where I picked her up, she said, 'There's my daddy.' I stopped in front of the man she said was her daddy, and she got out.

"I was immediately arrested after the little girl got out. During the time she was in my car I did not molest the little girl in any way and did not remove any of her clothing.

"I have read the above statement, consisting of this and three other pages, and it is true and correct. I have signed and initialed the statement.
                    "DOYLE F. DAVIDSON
"Witnesses:
"GEORGE T. BINNEY
"Federal Bureau of Investigation
"Kansas City, Missouri
"THOMAS PETER McHUGH
"Federal Bureau of Investigation
"Kansas City, Missouri."

■ The argument that, under the decision of the Supreme Court in Chatwin v. United States, 326 U.S. 455, 66 S.Ct. 233, 90 L.Ed. 198, the instant case was not one within the coverage of the Act, is not without force. The Chatwin case is readily distinguishable from this case on its facts. That case involved no semblance of involuntary restraint of the alleged victim and no unconsented-to transportation in interstate commerce. It is the language of Mr. Justice Murphy, on pages 464–465 of 326 U.S., page 237 of 66 S.Ct.[4] that is thought to indicate that the inveiglement, interstate transportation and sexual abuse of children is to be regarded as a local crime, "lacking the characteristics of true kidnapings". In Homan v. United States, 8 Cir., 279 F.2d 767 (cert. denied 364 U.S. 866, 81 S.Ct. 110, 5 L.Ed.2d 88), this Court sustained a conviction, under the Federal Kidnaping Act, of a defendant who was also clearly guilty of rape under Iowa law. In Dusky v. United States, 8 Cir., 295 F.2d 743, cert. denied 368 U.S. 998, 82 S.Ct. 625, 7 L.Ed. 2d 536, involving the transportation of a girl from Kansas to Missouri after she had been taken from the latter State to Kansas for purposes of rape, we sustained the conviction of Dusky under the Federal Kidnaping Act, although he might well have been prosecuted for rape by the State of Kansas. See also and compare, Eidson v. United States, 10 Cir., 272 F.2d 684, 687, a case resembling this one.

Not without some misgivings, we hold that the Chatwin case does not require the reversal of the conviction of the defendant in this case.

When the defendant enticed the six-year-old child into his automobile and drove away with her, that, in our opinion, constituted an involuntary and illegal seizure and restraint, and brought his conduct within the Act. Cf. United States v. Bazzell, 7 Cir., 187 F.2d 878, 882.

■ The District Court committed no error in admitting in evidence the statement of the defendant, obtained by agents of the Federal Bureau of Investigation prior to producing him before a United States Commissioner. Cf. Hayes v. United States, 8 Cir., 296 F.2d 657, 668–670. There was no claim that the statement was involuntary or inaccurate, and the defendant himself testified at the trial that the facts stated were true.

4. "But the broadness of the statutory language does not permit us to tear the words out of their context, using the magic of lexigraphy to apply them to unattractive or immoral situations lacking the involuntariness of seizure and detention which is the very essence of the crime of kidnaping. Thus, if this essential element is missing, the act of participating in illicit relations or contributing to the delinquency of a minor or entering into a celestial marriage, followed by interstate transportation, does not constitute a crime under the Federal Kidnaping Act. No unusual or notorious situation relating to the inability of state authorities to capture and punish participants in such activities evidenced itself at the time this Act was created; no authoritative spokesman indicated that the Act was to be used to assist the states in these matters, however unlawful and obnoxious the character of these activities might otherwise be. Nor is there any indication that Congress desired or contemplated that the punishment of death or long imprisonment, as authorized by the Act, might be applied to those guilty of immoralities lacking the characteristics of true kidnapings. In short, the purpose of the Act was to outlaw interstate kidnapings rather than general transgressions of morality involving the crossing of state lines. And the broad language of the statute must be interpreted and applied with that plain fact in mind. See United States v. American Trucking Associations, 310 U.S. 534, 543–544, 60 S.Ct. 1059, 1063, 1064, 84 L. Ed. 1345.

"Were we to sanction a careless concept of the crime of kidnaping or were we to disregard the background and setting of the Act the boundaries of potential liability would be lost in infinity. A loose construction of the statutory language conceivably could lead to the punishment of any one who induced another to leave his surroundings and do some innocent or illegal act of benefit to the former, state lines subsequently being traversed. The absurdity of such a result, with its attendant likelihood of unfair punishment and blackmail, is sufficient by itself to foreclose that construction."

The failure to bring the defendant to trial more promptly would certainly not warrant the invalidation of his conviction. If a defendant wants a speedy trial, it is his duty to ask for it. Phillips v. United States, 8 Cir., 201 F. 259, 262; Frankel v. Woodrough, 8 Cir., 7 F.2d 796, 798. A delay which is not "purposeful or oppressive" is not violative of the constitutional right of a defendant to a speedy trial. Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 485, 1 L.Ed.2d 393. A motion to dismiss an indictment under Rule 48(b), Federal Rules of Criminal Procedure, 18 U.S.C., is apparently the remedy for undue delay in bringing a defendant to trial.

The defendant had a fair trial. He was represented by competent counsel. Under the evidence, the question of his guilt or innocence was for the jury. The case was submitted to the jury under instructions to which no exceptions were, or could be, taken. We find nothing in the record that would justify this Court in reversing the judgment appealed from.

The judgment is affirmed.