UNITED STATES of America, Plaintiff,

v.

Philip Henry ATKINSON, a/k/a Phillip Henry Creek, a/k/a Philip Henry Stands, Waylon Eric Duran, and Miguel J. Duran, Defendants.

No. CR 95–30013.

United States District Court,
D. South Dakota,
Central Division.

Feb. 5, 1996.

960

Mikal G. Hanson, Asst. U.S. Atty., Pierre, SD, for plaintiff.

Bernard E. Duffy, Ft. Pierre, SD, for Philip Atkinson.

Anita Lynne Fuoss, Murdo, SD, for Waylon Eric Duran.

Robert T. Hiatt, Pierre, SD, for Miguel J. Duran.

KORNMANN, District Judge.

Defendants were charged with kidnapping, assault with a deadly weapon, and assault resulting in serious bodily injury. At the conclusion of the government's case, defendant Miguel J. Duran's ("Miguel") motion for judgment of acquittal was granted with respect to the charge of kidnapping. All other motions for judgment of acquittal were denied or a ruling was reserved. The jury convicted defendant Philip Stands ("Philip") of kidnapping, assault with a deadly weapon, and assault resulting in serious bodily injury. The jury convicted Waylon Duran ("Waylon") of assault with a deadly weapon and assault resulting in serious bodily injury. The jury convicted Miguel of assault resulting in serious bodily injury.

Defendants have moved for judgment of acquittal or, in the alternative, for a new trial on the grounds of insufficiency of the evidence, insufficiency of the indictment, or lack of jurisdiction.

## JURISDICTION

The defendants contend the Court lacks jurisdiction over this case because the prosecution did not prove that the site of the crime was ever "Indian country". The jury was instructed:

Section 1151 of Title 18, United States Code, provides in part that: The term "Indian country" ... means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.

At trial, Larry Marshall, an employee of the Rosebud Sioux Tribe's land management office, using an aerial photograph and a plat from his office, testified that the site was on tribal trust land. He also, as a lay person, testified to a different version, namely that the site in question was not "Indian country." The exhibits used by Mr. Marshall were received into evidence and submitted to the jury who also heard his testimony.

■ Defendants were charged under 18 U.S.C. § 1153, which extends to federal courts jurisdiction over certain major crimes committed by Indians in Indian country. The burden is on the government to prove, as a jurisdictional requisite, that the major crime was committed by an Indian in Indian country. *United States v. Torres,* 733 F.2d 449, 454 (7th Cir.1984), *United States v. Jewett,* 438 F.2d 495, 497 (8th Cir.1971).

■ The locus of the offense is an issue for the trier of fact. *United States v. Gipe,* 672 F.2d 777, 779 (9th Cir.1982). The government produced evidence that the site in question was on tribal trust land. While there is no doubt that better evidence could have been submitted, admission of secondary evidence is within the broad discretion of the trial court. *United States v. Jewett,* 438 F.2d at 497.

With respect to each offense, the jury was instructed that one of the essential elements was that the act took place within Indian country. To return a verdict of guilty, the jury had to find such to be true beyond a reasonable doubt. In rendering its guilty verdict, the jury made such a finding. *United States v. Eder,* 836 F.2d 1145, 1147 (8th Cir.1988). Since evidence was submitted and the jury was properly instructed as to the burden of proof and the necessary elements, which included jurisdiction, the motions for judgment of acquittal based on lack of jurisdiction are denied.

## SUFFICIENCY OF SUPERSEDING INDICTMENT

■ The defendants contend the superseding indictment was insufficient because of a variance in the description of the site location in it and the evidence elicited at trial. A variance in proof is important only if it affects the substantial rights of the accused. *Berger v. United States,* 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935). The requirement that the allegations and the proof must correspond is based upon the concepts that the accused shall be definitely informed as to the charges so he is able to present his defense and not be taken by surprise at the trial, and also, that the accused may be protected against another prosecution for the same offense. *Id.*

In this case, all defendants were clearly informed of the charges against them, and capably presented their defenses. All prosecution witnesses were effectively cross-examined and evidence in the defendants' behalf was submitted. There was no confusion as to the understanding of the charges. By the same token, another prosecution for the same offense could not be maintained. The crimes are clearly identified so as to warrant a dismissal of any attempt for a second prosecution. The superseding indictment was sufficient, and the motions for judgment of acquittal based on insufficiency are denied.

The indictment charged that the kidnapping occurred at the site of the assault. Federal Rule of Criminal Procedure 7(c) provides in part that the "indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." "An indictment is sufficient if it informs the defendant of the charge and permits him to plead his

conviction as a bar to another prosecution." *United States v. Key,* 717 F.2d 1206, 1210 (8th Cir.1983).

> "The sufficiency of an indictment should be determined by practical, as distinguished from purely technical, considerations. Does it, under all the circumstances of the case, tell the defendant all that he needs to show for his defense, and does it so specify that with which he is charged that he will be in no danger of being a second time put in jeopardy? If it does do, it should be held good."

*United States v. Matzkin,* 14 F.3d 1014, 1019 (4th Cir.1994).

The United States Supreme Court held in *Chatwin v. United States* that the Federal Kidnapping Act has two elements:

> the kidnapped victim shall have been (1) "unlawfully seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away by any means whatsoever" and (2) "held for ransom or reward or otherwise."

*Chatwin v. United States,* 326 U.S. 455, 459, 66 S.Ct. 233, 235, 90 L.Ed. 198. The superseding indictment charged these two elements. Information about the place of the kidnapping is merely to establish jurisdiction. "[T]he federal crime of kidnapping 'continues as long as the victim is held.'" *United States v. Morales,* 11 F.3d 915, 921 (9th Cir.1993) (O'Scannlain, C.J., concurring), *United States v. Garcia,* 854 F.2d 340, 343 (9th Cir.1988). Therefore, regardless of where the inveigling or decoying occurred in this case, the crime continued to the spot where Torrez was assaulted. The superseding indictment as a practical matter was sufficient in establishing the jurisdiction of this court over the kidnapping count.

### KIDNAPPING

Whether the crime of kidnapping is a proper legal indictment under the facts of this case is a more perplexing issue. The evidence at trial showed that Philip's common law wife by Indian tradition, Candida, was found by a police officer in an injured condition in the early morning hours. She reported no crime to the police. She told Philip she had been assaulted. Philip stated that he was going to cut the guy who raped his wife. Philip went on a systematic search, finally learned the first name of the alleged attacker, and eventually drove to Torrez' house in Rosebud. Philip, who had never met Torrez, invited Torrez to get into his vehicle to go drinking under the ruse that the two were blood relatives. Philip told Torrez he was going to show him some ancestral family land since they were related. Philip, Waylon, Dale Stands, Miguel and Torrez went to Candida's house in Horse Creek for Philip's purpose of having her identify Torrez as her attacker. Candida, by peeking out a window, at the insistence of Philip, identified Torrez as her attacker. The five men proceeded to White River to pawn jewelry to obtain money to buy more beer. After obtaining beer, Philip drove out of White River and off the road on a trail to a secluded area where the men got out of the car and continued to drink beer. Philip selected the site, believing they were not in "Indian country" and thus not subject to federal jurisdiction. Philip approached Torrez from behind and hit him in the back of the head with a club. Walyon joined in and the two continued to beat Torrez. Waylon removed Torrez' clothing, and defendants left Torrez badly injured, either unconscious or dead, in a remote area and with the weather cold. He managed to survive and made his way to the road where he was picked up the following day.

The Federal Kidnapping Act provides in part:

> Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when ... any such act against the person is done within the special maritime and territorial jurisdiction of the United States ... shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment.

18 U.S.C. § 1201(a)(2). History shows:

> This statute was drawn in 1932 against a background of organized violence. Kidnapping by that time had become an epidemic in the United States. Ruthless

criminal bands utilized every known legal and scientific means to achieve their aims and to protect themselves. Victims were selected from among the wealthy with great care and study. Details of the seizures and detentions were fully and meticulously worked out in advance. Ransom was the usual motive. "Law enforcement authorities, lacking coordination, with no uniform system of intercommunication and restricted in authority to activities in their own jurisdiction, found themselves laughed at by criminals bound by no such inhibitions or restriction * * * the procedure was simple—a man would be kidnapped in one State and whisked into another, and still another, his captors knowing full well that the police in the jurisdiction where the crime was committed had no authority as far as the State of confinement and concealment was concerned." It was to assist the states in stamping out this growing and sinister menace of kidnapping that the Federal Kidnapping Act was designed.
*Chatwin v. United States,* 326 U.S. 455, 462–463, 66 S.Ct. 233, 236–237, 90 L.Ed. 198 (1946). "[T]he broadness of the statutory language does not permit us to tear the words out of their context, using the magic of lexigraphy to apply them to unattractive or immoral situations lacking the involuntariness of seizure and detention which is the very essence of the crime of kidnapping." *Chatwin v. United States,* 326 U.S. at 464, 66 S.Ct. at 237. "A loose construction of the statutory language conceivably could lead to the punishment of anyone who induced another to leave his surroundings and do some innocent or illegal act of benefit to the former, state lines subsequently being traversed." *Id.*

■ Chatwin makes it clear that "the very essence of the crime of kidnapping" is "the involuntariness of seizure and detention." Therefore, the "victim's lack of consent is a fundamental element of kidnapping." *United States v. McCabe,* 812 F.2d 1060, 1061 (8th Cir.1987).

■ This Court must determine whether, under the facts of this case, the victim's presence in the car with the defendants was voluntary or involuntary. Torrez was not forced into Philip's vehicle but entered willingly under false pretenses. The Eighth Circuit, in *United States v. Hoog,* 504 F.2d 45 (8th Cir.1974), held that inducing a victim into accepting a ride by false representations, and luring or enticing the victim, again by false promises, to stay in the vehicle amounts to inveigling or decoying the victim within the Act. *United States v. Hoog,* 504 F.2d at 51. See also *United States v. Hughes,* 716 F.2d 234 (4th Cir.1983) (citing *Hoog* ); *United States v. Carrion–Caliz,* 944 F.2d 220 (5th Cir.1991) (citing *Hoog* ). In *Miller v. United States,* 138 F.2d 258 (8th Cir.1943), the Eighth Circuit held evidence that the defendant falsely told the victim her grandfather was on his deathbed, deceiving her into accompanying him to Texas so that she could be pressed into involuntary servitude by threats and beatings, amounted to inveigling within the statute. *Id.* at 260.

In *Davidson v. United States,* 312 F.2d 163 (8th Cir.1963), the Eighth Circuit held *Chatwin* did not require reversal of a kidnapping conviction where "the defendant enticed the six-year-old child into his automobile and drove away with her." *Id.* at 166. This "constituted an involuntary and illegal seizure and restraint, and brought his conduct within the Act." *Id.*

Other circuits have also held that the victim's voluntary presence may nonetheless amount to inveigling within the Act. Nothing in the policy of the Act "justifies rewarding the kidnapper simply because he is ingenious enough to conceal his true motive from his victim until he is able to transport her into another jurisdiction." *United States v. Hughes,* 716 F.2d 234, 239 (4th Cir.1983). In *Hughes,* the defendant introduced himself to the thirteen year old victim by using a false identity. He misrepresented his acquaintance with the victim's friend to encourage her trust and convinced the victim to voluntarily enter his vehicle. He drove her across state lines under the guise of taking her to visit her friend, drove to a secluded spot, lying to the victim about the purpose of their detour, and beat her. The Fourth Circuit held that "[b]y inducing his victim by misrepresentation to enter his vehicle and to accompany him, and knowing that the victim's be-

lief as to their purpose and destination is different from his actual illicit purpose, the kidnapper has interfered with, and exercised control over, her actions." *United States v. Hughes,* 716 F.2d at 239. Such conduct is "sufficient to satisfy the 'involuntariness of seizure and detention' requirement of Chatwin." *Id.*

In the present case, the jury reasonably could have found that Philip wanted to assault Torrez on state land. Thus, no assault occurred prior to arriving at the isolated site. The jury could have reasonably found it would have been illogical for Philip to be spending hours driving around and drinking with Torrez, but for the motive of Philip to later assault Torrez in a jurisdiction not subject to the F.B.I., U.S. Attorneys and federal courts.

The Second Circuit has held that "the very nature of the crime of kidnapping requires that the kidnapper use some means of force - actual or threatened, physical or mental—in each elemental stage of the crime, so that the victim is taken, held and transported against his or her will." *United States v. Macklin,* 671 F.2d 60, 64 (2nd Cir.1982). This may be accomplished by inveigling or decoying the victim. *Id.* at 66 (the court found no facts to support a claim of inveigling where no false representations or promises were made to the children).

The Eleventh Circuit's decision in *United States v. Boone,* 959 F.2d 1550 (11th Cir. 1992) is instructive. In *Boone,* the defendant induced the victim to travel with him from Florida to Georgia, falsely telling the victim of a marijuana patch in Georgia. They traveled in the victim's car, defendant driving, and stopped for fuel and beer along the way. The two men drove to a remote location where the defendant fatally stabbed the victim. The defendant then took the victim's wallet, personal belongings, and car. Boone was convicted of kidnapping. Boone contended he did not violate the federal kidnapping statute because his victim was willing to accompany him from Florida to Georgia, and that such consent vitiates his conviction. Boone cited *United States v. Chancey,* 715 F.2d 543, 546 (11th Cir.1983) ("To be exactly specific, if the interstate transportation is by consent there is no case.") and *Hattaway v. United States,* 399 F.2d 431, 433 (5th Cir. 1968) ("[C]onsent would be a complete defense to a charge under the kidnapping statute. . . .").

The Eleventh Circuit distinguished *Hattaway* and *Chancey* because "neither case addresses whether an inveigled person can validly consent to be transported in interstate commerce where the willingness to be transported is the result of the defendant's continuing deception." *United States v. Boone,* 959 F.2d at 1557. "Inveigling and decoying, which necessarily contemplate obtaining another's apparent but unknowing consent by deception would not be independently prohibited as means of kidnapping under the statute." *Id.*

The *Boone* court found that "[w]here an inveiglement occurs and force is held in reserve only because the kidnapper's deception is operating successfully, an unlawful interference with the actions of another has occurred—whether or not that person is aware of the interference—such that a kidnapping and holding has occurred under the statute." *United States v. Boone,* 959 F.2d at 1556.

" * * * where a kidnapper accompanies his inveigled victim, preserving the deception and intending to use physical or psychological force if necessary, the volition of the victim is undermined beyond mere inducement by deception. The victim is kept from acting in an entirely voluntary manner by the acts, presence, and intent of his inveigling kidnapper. He is ensnared within a net that his kidnapper's deception has prevented him from seeing. In such a situation, the victim's act of accompanying his kidnapper cannot be entirely voluntary and cannot amount to legally valid consent."

*United States v. Boone,* 959 F.2d at 1557.

Much of the case law concerning the Federal Kidnapping Act concerns 18 U.S.C. § 1201(a)(1), which makes kidnapping a federal crime when the victim is transported across state lines. Subsection 1201(a)(1) includes the word "willfully". However, Philip was charged with and convicted of violating subsection (a)(2), which makes kidnapping a

federal crime when committed "within the special maritime and territorial jurisdiction of the United States" (the reservation in this case). The Act was amended in 1972 to remove the word "knowingly" and to make subsections (1) and (2) two separate bases for federal jurisdiction, with the word "willfully" appearing only in subsection (1).

■ The present case does not depend upon the interstate transportation of the victim. Instead, the government must show that Philip unlawfully inveigled and held Torrez for "ransom, reward or otherwise" in Indian country. The superseding indictment charges that Philip committed the kidnapping for the purpose of assaulting Torrez. The United States Supreme Court held in *Chatwin* that the Act has two elements:

the kidnapped victim shall have been (1) "unlawfully seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away by any means whatsoever" and (2) "held for ransom or reward or otherwise."

*Chatwin v. United States*, 326 U.S. at 459, 66 S.Ct. at 235. The Eighth Circuit has held that "or otherwise" should be broadly interpreted and a "motive of pecuniary profit" is not required. *United States v. McCabe*, 812 F.2d 1060, 1062 (8th Cir.), cert. denied, 484 U.S. 832, 108 S.Ct. 108, 98 L.Ed.2d 67 (1987), quoting from *United States v. Crosby*, 713 F.2d 1066, 1070–71 (5th Cir.1983). " 'Congress' by the phrase 'or otherwise' intended to include any object of a kidnapping which the perpetrator might consider of sufficient benefit to himself to induce him to undertake it." *Id.*, quoting from *United States v. Wolford*, 444 F.2d 876, 881 (D.C.Cir.1971), (quoting *United States v. Parker*, 103 F.2d 857 (3rd Cir.1939)). See also *United States v. Eagle Thunder*, 893 F.2d 950, 953 (8th Cir. 1990). There was evidence under which a reasonable jury could find that Philip kidnapped Torrez for the purpose of unlawfully assaulting him.

The jury could reasonably have found that Philip used deception to convince Torrez to accompany him first to Candida's residence for the "line-up" and then to the remote site. Philip argues that after learning Torrez allegedly assaulted Candida, Philip and Torrez continued to travel and drink together without further motive on Philip's part. A reasonable jury could have found this contention to be against the weight of the circumstantial evidence.

## SUFFICIENCY OF THE EVIDENCE

The Eighth Circuit's standard of review for claims of insufficient evidence is very strict and the verdict of a jury should not be overturned lightly. *United States v. Scott*, 64 F.3d 377, 380 (8th Cir.1955).

The jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable-minded jury to find guilt beyond a reasonable doubt. *Id.* A conviction may be based on circumstantial as well as direct evidence and need not exclude every reasonable hypothesis except guilt. *Id.* In addition, we must review the evidence in the light most favorable to the government and accept all reasonable inferences supporting the verdict. *Id.*

■ Miguel contends the evidence is insufficient to sustain the verdict that he assaulted or aided and abetted the serious bodily injury assault on Torrez. The evidence shows that Miguel stated he would get even with the guy who raped his sister, Candida. He had some participation in the search and find mission with Philip. He accompanied the group to the informal lineup. A reasonable jury could have decided he knew the group or at least Philip had evil intentions as to Torrez. The evidence showed he removed one or more clubs from the trunk, one or more of which were used to beat Torrez. There was also evidence that he may have urged the others to break Torrez's nose. The Eighth Circuit stated in *United States v. Simpson*, 979 F.2d 1282 (8th Cir.1992) that:

We have adopted the definition of aider and abettor liability set forth by Judge Learned Hand, which requires that the alleged aider and abettor "in some sort associate [himself] with the venture, that [he] participate in it as in something [he] wishes to bring about, that [he] seek by [his] action to make it succeed."

*Id.* at 1288, quoting *United States v. Roan Eagle*, 867 F.2d 436, 445 n. 15 (8th Cir.1989).

There is sufficient evidence to support Miguel's conviction for aiding and abetting in the assault upon Torrez.

There is likewise more than sufficient evidence to uphold Waylon's and Philip's convictions for assault without further need to review the evidence.

## CONCLUSION

This Court is bound by decisions of the United States Court of Appeals for the Eighth Circuit. Prior to researching the question as to the kidnapping conviction, this Court would have concluded that under the facts of this case the crime of kidnapping should not lie. The broadness of the statutory language allows its application to unattractive or immoral situations lacking the essential elements of involuntary seizure and detention. Consideration should be given to overzealous prosecution in cases where the duration of the detention or asportation is brief, where the asportation did not occur during the commission of any separate offense, where the detention or asportation which did occur is not inherent in the separate offense, and where the asportation or detention did not create any significant danger to the victim independent of that posed by the separate offense. All these factors are present here but this Court is unable to follow the rationale of *Government of the Virgin Islands v. Berry*, 604 F.2d 221 (3d Cir.1979).

All motions should be and they are hereby denied.

IT IS SO ORDERED.