541 S.E.2d 541

**The STATE, Respondent,**

**v.**

**Donald W. GAY, Appellant.**

**No. 25243.**

Supreme Court of South Carolina.

Heard Jan. 9, 2001.
Decided Jan. 24, 2001.

544

Assistant Appellate Defender Robert M. Dudek, of the South Carolina Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Senior Assistant Attorney General William Edgar Salter, III, and Solicitor W. Barney Giese, all of Columbia, for respondent.

WALLER, Justice:

A jury convicted appellant of murder, and the trial court sentenced him to life imprisonment. He directly appeals the conviction and sentence. We affirm.

## FACTS

On December 31, 1995, the partially-clothed body of fifty-year-old Patricia Huffstetler ("victim") was discovered in the tunnel below Interstate 26, near Elmwood Avenue in Columbia ("the tunnel"). She had been stabbed four times in the chest. Approximately 20 feet from the body, there were signs of a struggle, a pair of broken eyeglasses, and drag marks which led to the body.

As part of the investigation, Detective Robert Benson was questioning people at the Salvation Army on January 3, 1996. Appellant approached Detective Benson saying that the detective would want to talk with him. Because of the late hour, Detective Benson asked appellant to come to the police station the next day. Appellant arrived at the station the following morning, and Detective Steve Rice interviewed appellant. Ap-

pellant gave Detective Rice a statement in which appellant said that he knew the victim and had last seen her a few days before Christmas. Appellant denied that he had ever been physically involved with the victim.

After hearing about the victim in the news on New Year's Day, the victim's former boyfriend, Greg Hiers, contacted police. Hiers told Detective Benson that, based on information from his Caller ID, he believed the victim had called him from a pay phone at 10:59 a.m. on December 31.[1]

The pay phone was located outside an Exxon station on Elmwood Avenue. On January 4, 1996, Detective Rice obtained the surveillance tape from the convenience store at the Exxon station for the day of December 31, 1995. That evening, Detective Rice viewed the videotape which showed the victim, together with appellant, in the convenience store from 10:48 to 10:52 a.m. Detective Rice testified that he recognized appellant because he had just interviewed him that morning.

Realizing that appellant had lied about when he last saw the victim, the police located appellant and again questioned him at the station. After being confronted with the videotape, appellant initially denied, but then admitted the tape reflected that he and the victim were together the morning of December 31.

Police searched appellant's room at the Salvation Army. In the room, police seized three trash bags and a duffel bag.[2] A damp, black sweatshirt was retrieved from one of the bags.[3] In addition, police discovered a knife under the pillow of the unoccupied bunk.

---

1. Hiers also testified that he and the victim had problems with alcohol, they had met at an Alcoholics Anonymous meeting, and after he went to jail for a DUI conviction, the victim began living with Louis Metz.

2. Appellant was not in the room at the time police conducted their search. There were six bunks in the room; with the exception of one, all the beds were occupied when police arrived. Police concentrated their search in and around the unoccupied bed. The trash bags had papers with appellant's name on them, thus indicating that the belongings were his.

3. From the videotape, appellant appeared to be wearing a black sweatshirt on December 31.

The State presented evidence that robbery was appellant's motive for the crime. In the videotape, the victim paid for her purchase at the Exxon convenience store from a white purse, and the cashier testified that the victim paid with a $50 or $100 bill. The police discovered the white purse, without any money in it, in a cemetery located between the Exxon and the tunnel. Police searched appellant's car and found a bill of sale for the car dated January 3, 1996. The seller of the car testified that appellant had purchased the car for $270, using mostly large bills.

In addition, the State presented evidence which linked appellant to the knife discovered on the bunk at the Salvation Army. Walter Armstrong testified that approximately four years before trial he gave appellant a knife similar to the one discovered and that he saw appellant with the knife as recently as November 1995. The pathologist testified that the knife was consistent with the weapon which caused the victim's stab wounds.

Finally, the State presented significant forensic evidence linking appellant to the crime. An expert in shoe print identification stated that appellant's Nike sneakers were consistent with a shoe print found near the body in the tunnel. An expert in trace evidence testified that a hair from inside the victim's coat was consistent with appellant's hair. An expert in forensic serology testified that blood stains found on appellant's jacket and his black sweatshirt were consistent with the victim's blood type and also stated that human blood was found on the knife.

Furthermore, an expert in DNA analysis testified that the blood found on the black sweatshirt matched the victim's DNA blood profile. The DNA expert also testified that semen found inside the victim's body matched appellant's DNA profile.[4] In the DNA expert's opinion, the blood on appellant's sweatshirt was the victim's blood and the semen was from appellant.

---

4. Semen found *outside* the victim's vaginal area was analyzed and found to be a mixture of appellant's and another unknown male's semen.

## ISSUES

1. Did the trial court err in excluding evidence of third party guilt?

2. Did the trial court err by admitting a photograph of the victim and her former boyfriend?

3. Did the trial court err in not considering a minimum thirty-year sentence pursuant to the version of S.C.Code Ann. § 16–3–20(A) which was in effect at the time of sentencing?

## 1. THIRD PARTY GUILT

Appellant argues that third party guilt evidence related to Louis Metz was improperly excluded by the trial court.

Appellant sought to introduce evidence related to Metz in two different ways. First, through various proffers, appellant sought to introduce the following evidence about Metz. Hiers, the victim's former boyfriend, testified in camera that the victim and Metz lived together and that Metz told Hiers many times that he was going to kill the victim. Hiers stated that Metz relayed this threat to him even on the date of the victim's death. However, Hiers recalled that Metz said he was going to kill the victim in phone conversations at 5:30 p.m. and 8:30 p.m. on December 31, and the victim's body had been discovered at approximately 4:00 p.m. that day.

Additionally, appellant proffered testimony that in police interviews: (1) Metz admitted that he argued with, hit, and had sex with the victim on December 31; (2) Betty Jackson stated that Metz told her he hit the victim during an argument on December 31 because the victim had taken $300 from him and that she saw Metz's knuckles were swollen on January 1, 1996.

Appellant also sought to admit evidence that blood and hair samples were taken from Metz. Significantly, however, the forensic experts concluded that none of the evidence matched Metz. After the various proffers, the trial court did not allow appellant to introduce the evidence about Metz.

Second, there was evidence about Metz in appellant's statement to police. Specifically, in his statement, appellant told police that (1) Metz was someone "special" in the victim's life;

(2) the victim talked about how Metz would "beat on her;" (3) appellant saw the victim beaten up; (4) the victim told appellant approximately 20 times in six months that Metz had beaten her up and it was all she could talk about when she was drunk; and (5) the victim acted as if she was scared of Metz. Although the State introduced appellant's statement, it moved to redact the references to Metz. Reasoning that the evidence about Metz did not meet the standard for admissibility of third party guilt evidence, the trial court allowed the redactions.

■ It is well-settled that the admission and rejection of proffered testimony is within the sound discretion of the trial court and its exercise of such discretion will not be disturbed by this Court on appeal unless it can be shown that there has been an abuse of discretion, a commission of legal error in its exercise, and that the rights of the appellant have been thereby prejudiced. *E.g.*, *State v. Gregory*, 198 S.C. 98, 16 S.E.2d 532 (1941).

■ Evidence offered by a defendant as to the commission of the crime by another person is limited to facts which are inconsistent with the defendant's guilt. *State v. Beckham*, 334 S.C. 302, 513 S.E.2d 606 (1999); *State v. Parker*, 294 S.C. 465, 366 S.E.2d 10 (1988); *Gregory, supra.* In *Gregory*, this Court explained that:

> evidence offered by accused as to the commission of the crime by another person must be limited to such facts ... as raise a reasonable inference or presumption as to his own innocence; evidence which can have (no) other effect than to cast a bare suspicion upon another, or to raise a conjectural inference as to the commission of the crime by another, is not admissible.... [B]efore such testimony can be received, there must be such proof of connection with it, such a train of facts or circumstances, as tends clearly to point out such other person as the guilty party.

*Gregory*, 198 S.C. at 104–05, 16 S.E.2d at 534–35 (internal quotes and citations omitted). Furthermore, this Court has held that evidence of a third party's motive and opportunity to kill the victim is properly excluded where the appellant nonetheless fails to show that the proffered evidence is inconsistent with his guilt. *State v. Williams*, 321 S.C. 327, 335, 468

S.E.2d 626, 631, *cert. denied,* 519 U.S. 891, 117 S.Ct. 230, 136 L.Ed.2d 161 (1996).

The trial court found that given the totality of the evidence against appellant and the nature of the evidence proffered regarding Metz, the evidence was not inconsistent with appellant's guilt and thus would serve merely to cast suspicion upon Metz. In our opinion, the trial court properly exercised its discretion. *See Gregory, supra.*

In view of the strong evidence of appellant's guilt—especially the forensic evidence—and the fact that the forensic experts found that the samples from Metz did not match *any* evidence gathered in this case, the proffered evidence about Metz did not raise "a reasonable inference" as to appellant's own innocence. *Gregory,* 198 S.C. at 104, 16 S.E.2d at 534. Moreover, while the proffered evidence about Metz may have established evidence of motive and opportunity for Metz to kill the victim, the evidence simply was not inconsistent with appellant's guilt. *Williams, supra.*

Regarding the evidence about Metz in appellant's statement to police, appellant argues that the trial court erred in allowing his statement to be redacted. Appellant contends Rule 106, SCRE, required that the entire statement be admitted.

Rule 106, SCRE, provides that "[w]hen a writing, or recorded statement, or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." In *State v. Taylor,* 333 S.C. 159, 508 S.E.2d 870 (1998), the Court stated that "[o]nly that portion of the remainder of a statement which explains or clarifies the previously admitted portion should be introduced." *Id.* at 171, 508 S.E.2d at 876.

The trial court did not violate Rule 106 by admitting appellant's statement because the redacted portion would not have explained or clarified that part of the statement which was admitted. *See id.* The admitted portion outlined how appellant knew the victim and other general information about the victim, for example the fact that she drank "quite a lot" of alcohol. The redacted portion addressed the victim's relationship with Metz and therefore did not impact the portion the

State admitted.[5] Moreover, for the reasons discussed above, we agree with the trial court that the redacted portion would have been improperly admitted as third party guilt evidence.

Accordingly, the trial court's decision to exclude evidence regarding Metz is affirmed.

## 2. ADMISSIBILITY OF PHOTOGRAPH

Appellant argues that the trial court erroneously admitted a photograph of the victim and her former boyfriend Greg Hiers because the photograph was irrelevant and was only offered to arouse sympathy for the victim.

During Hiers's testimony, the State admitted a photograph of Hiers and the victim taken in 1993. The photograph shows the two sitting on a bench with Hiers's arm around the victim and city lights in the background. The State established, through testimony from Hiers, that the victim was wearing her eyeglasses in the photograph.

Appellant maintains that this Court's decision in *State v. Livingston*, 327 S.C. 17, 488 S.E.2d 313 (1997), establishes that the admission of the photograph was improper. The *Livingston* Court reversed a conviction for felony driving under the influence (DUI) of marijuana where the appellant had caused a car accident, killing a woman in the other car. The woman's husband testified at trial, and a photograph of the two was admitted. This Court held that the photograph was irrelevant to the trial since DUI was the only charge at issue. The Court stated that "a photograph should be excluded if it is calculated to arouse the sympathy or prejudice of the jury or is irrelevant *or unnecessary to substantiate facts*." *Id.* at 20, 488 S.E.2d at 314 (emphasis added).

The State argues that the photograph was relevant to establish the broken eyeglasses which were found in the tunnel 20 feet away from the body were actually the victim's eyeglasses. We agree. This fact was relevant to establishing that a struggle had occurred in the tunnel. *See* Rule 401,

---

5. We note that one part of the admitted statement referenced "Lewie" (i.e. Metz); however, because there was testimony that the victim lived with Metz, this isolated reference did not require any explanation from the redacted portion.

SCRE (evidence is relevant if it has a direct bearing upon and tends to establish or make more or less probable the matter in controversy). In our opinion, the admission of the photograph was not "calculated to arouse the sympathy or prejudice of the jury;" instead, it was admitted to "substantiate facts" surrounding the circumstances of the murder. *Livingston*, 327 S.C. at 20, 488 S.E.2d at 314. Moreover, the probative value of the photograph was not outweighed by any unfair prejudicial value. *See* Rule 403, SCRE (relevant evidence may be excluded if the danger of unfair prejudice substantially outweighs its probative value).

We therefore affirm the trial court's admission of the photograph.[6]

### 3. SENTENCING UNDER S.C. CODE ANN. § 16–3–20(A)

Appellant argues that the trial court erred in sentencing him to a mandatory life sentence where S.C.Code Ann. § 16–3–20(A) allows a minimum sentence of thirty years imprisonment.

The murder was committed on December 31, 1995. At that time, section 16–3–20(A) read in pertinent part: "[a] person who is convicted of ... murder must be punished by death or by imprisonment for life...." S.C.Code Ann. § 16–3–20(A) (Supp.1995). Appellant was sentenced on September 26, 1997. An amendment to section 16–3–20(A) which took effect on January 1, 1996, changed the section to read, in relevant part: "[a] person who is convicted of ... murder must be punished by death, by imprisonment for life, *or by a mandatory minimum term of imprisonment for thirty years.*" S.C.Code Ann. § 16–3–20(A) (Supp.1995) (emphasis added); *see also* 1995 S.C. Acts No. 83, § 10 ("the Act").

Appellant maintains that because the statute in effect *at the time of sentencing* allowed a thirty-year sentence, whereas the statute in effect *at the time of the crime* mandated life

---

6. Even assuming that the trial court erroneously allowed the photograph into evidence, its admission was harmless. *See State v. Langley*, 334 S.C. 643, 647–48, 515 S.E.2d 98, 100 (1999) (the erroneous admission of irrelevant evidence may constitute harmless error if the evidence did not affect the outcome of the trial).

imprisonment, the trial court should have considered the statute in effect at the time of sentencing.[7]  Specifically, appellant relies on this Court's decision in *State v. Varner,* 310 S.C. 264, 423 S.E.2d 133 (1992).  In *Varner,* the Court stated that "[i]n the absence of a controlling statute, the common law requires that a convicted criminal receive the punishment in effect at the time he is sentenced, unless it is greater than the punishment provided for when the offense was committed." *Id.* at 265, 423 S.E.2d at 133.

Appellant argues that *Varner* applies, and therefore, the trial court should have considered a thirty-year sentence.  However, the *Varner* Court indicated that the Legislature could state its intent for new, lesser penalties to take effect based on the date of the crime rather than the date of sentencing.  *See Varner,* 310 S.C. at 266 n. 3, 423 S.E.2d at 134 n. 3.  The Act which amended section 16–3–20 specifically addressed its effective date.  Section 62 states that the Act "takes effect January 1, 1996, *and applies prospectively to all crimes committed on or after that date ....*"  1995 S.C. Acts No. 83, § 62 (emphasis added).

■   Because the Legislature expressly stated its intent for prospective application based upon the date of the crime's commission, the general rule of *Varner* does not apply.  The crime in this case was committed on December 31, 1995, one day before the amended statute's effective date; therefore, the trial court correctly sentenced appellant to a mandatory life imprisonment term.  *See* S.C.Code Ann. § 16–3–20(A) (Supp. 1995).

Accordingly, appellant's life sentence is affirmed.

**AFFIRMED.**

TOAL, C.J., MOORE, BURNETT and PLEICONES, JJ., concur.

---

7.  The trial court decided that a life sentence was mandatory.