548 S.E.2d 202

**The STATE, Respondent,**

v.

**Sammie Louis STOKES, Appellant.**

**No. 25298.**

Supreme Court of South Carolina.

Heard April 4, 2001.
Decided May 29, 2001.
Rehearing Denied July 2, 2001.

Deputy Chief Attorney Joseph L. Savitz, III, of South Carolina Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Tracey C. Green, all of Columbia, and Solicitor Walter M. Bailey, Jr., of Summerville, for respondent.

WALLER, Justice:

Sammie Louis Stokes was convicted of murder, kidnapping, first degree criminal sexual conduct (CSC), and criminal conspiracy. He was respectively sentenced to death, thirty years, and 5 years.[1] This appeal consolidates his direct appeal with

---

1. Pursuant to S.C.Code Ann. § 16–3–910 (Supp.2000), no sentence was imposed for the kidnapping charge as Stokes was sentenced for murder.

the mandatory review provisions of S.C.Code Ann. § 16–3–25 (1985). We affirm the convictions and sentences.

## FACTS

Stokes was hired by Patti Syphrette to kill her daughter-in-law, 21–year–old Connie Snipes, for $2000.00. On May 22, 1998, Syphrette called Stokes and told him Connie "got to go and tonight." At 9:30 pm that evening, Syphrette and Snipes picked up Stokes at a pawn shop, and the three of them went to Branchville and picked up Norris Martin.[2] The four of them then drove down a dirt road in Branchville and stopped. Syphrette remained in the car while Stokes, Martin and Snipes'walked into the woods. When they got into the woods, Stokes told Snipes, "Baby, I'm sorry, but it's you that Pattie wants dead ...."

According to Norris Martin, Stokes forced Snipes to have sex with Martin at gunpoint. After Martin was finished, Stokes had sex with Snipes. While doing so, Stokes grabbed her breast and stabbed her in the chest, cutting both her nipples. Stokes then rolled her over and began having anal sex with her. When Stokes was finished, he and Martin each shot the victim one time in the head,[3] and then dragged her body into the woods. Stokes then took Martin's knife and scalped her, throwing her hair into the woods. According to Martin, Stokes then cut Snipes' vagina out.[4]

Snipes' body was found by a farmer on May 27th, and Martin's wallet was found in the field near it. Martin was interviewed by police the following morning, after which police went to the Orangeburg home of Pattie Syphrette's husband Poncho; by the time police arrived at the home on May 28, 1998, Stokes and Syphrette had already murdered Doug Fer-

**2.** Allegedly, Snipes accompanied the others on the premise that they were going to Branchville to kill a man named Doug Ferguson, whom Syphrette and Stokes had tied up in the woods.

**3.** Martin testified that Stokes placed the gun into his (Martin's) hand and then pulled the trigger.

**4.** According to the pathologist, Snipes' injuries were consistent with having been scalped, had the nipple area cut from each breast, and having had the vaginal area cut out.

guson by wrapping duct tape around his body and head, suffocating him.[5]

Stokes was tried and convicted of murder, kidnapping, first degree criminal sexual conduct, and criminal conspiracy.

## ISSUES

1. Did the trial court err in redacting portions of Stokes' statement to police which indicated Snipes had willingly gone to Branchville in order to kill Doug Ferguson?

2. Did the trial court err in limiting Stokes' discussion of religion in his closing statement to the jury?

## 1. REDACTED STATEMENT

Stokes wrote a lengthy letter to police in which he gave a detailed account of his participation in both the Snipes and Ferguson murders. Prior to trial, Stokes agreed on the record that he intended to "keep out everything as it relates to Doug Ferguson" from the guilt phase.

■ At trial, the solicitor moved to redact portions of Stokes' letter which indicated Snipes had been misled into believing they were all going to Branchville that evening for the purpose of killing Doug Ferguson. Counsel for Stokes maintained this portion of Stokes' letter should not be redacted, claiming it demonstrated Snipes had voluntarily accompanied Stokes and Syphrette to Branchville and had willingly gone into the woods with Stokes, thereby rebutting the State's claim of kidnapping. He also argued this portion of the statement was admissible under Rule 106, SCRE. We find the statement was properly redacted.

Stokes sought to admit the following portions of his letter to police:

She [Syphrette] said Connie thinks we are going to kill Doug and she thinks we already got him tied up in Branchville somewhere. She [Syphrette] said I wish that were true so we could do all both of them. She said Connie can't stand Doug and wants to be there to help us and besides

---

5. Stokes pleaded guilty to Ferguson's murder in a separate proceeding and was sentenced to life.

she wants to meet you anyway, I know you've been talking to her on the phone when Roy calls and I wasn't home. . . .
While riding to Branchville, Connie said Doug ain't shit and I'd love to see him get his. She said I had plans tonight but this is better. . . .
That's when Connie said well where is he at.
The unredacted portion of the letter continues, "I said 'Baby, I'm sorry but it's you that Pattie wants dead.'"

Contrary to Stokes' assertion, the redacted portions do not reflect that Snipes voluntarily rode to her death but, rather, serve only to demonstrate that she was, in fact, tricked into going into the woods. As such, the fact that she was "inveigled" or "decoyed"[6] into going to Branchville negates, in legal contemplation, the voluntariness of her participation.[7]

Addressing analogous situations under the federal kidnapping statute, several courts have reached similar conclusions. As noted by the Fourth Circuit Court of Appeals in *United States v. Hughes*, 716 F.2d 234, 239 (4th Cir.1983), "nothing in the policy of the . . . kidnapping statute justifies rewarding the kidnapper simply because he is ingenious enough to conceal his true motive from his victim until he is able to transport her . . . [to another location]." *See also United States v. Atkinson*, 916 F.Supp. 959 (D.S.D.1996) (victim's voluntary presence may nonetheless amount to inveigling); *United States v. Boone*, 959 F.2d 1550 (11th Cir.1992) (where kidnapper accompanies inveigled victim, victim is kept from acting in entirely voluntary manner by acts, presence, and intent of inveigling kidnapper, he is ensnared within net that kidnapper's deception has prevented him from seeing, and in such a case

---

**6.** S.C.Code Ann. § 16–3–910 (1976) defines kidnapping as the unlawful seizure, confinement, **inveigling, decoying**, kidnapping, abducting or carrying away of any other person by any means whatsoever without authority of law. The definition of "decoy" is "to lure successfully." NEW WEBSTER'S DICTIONARY AND THESAURUS 250 (1993). Inveigling has also been defined as "enticing, cajoling, or tempting the victim, usually through some deceitful means such as false promises." *United States v. Macklin*, 671 F.2d 60, 66 (2d Cir.1982).

**7.** Stokes' argument is akin to suggesting that a child molester who lures his child victim into his car with candy may be found not guilty of kidnapping, simply because the child "voluntarily" accompanied him in the hopes of receiving candy. We find such a position untenable.

victim's act of accompanying kidnapper is not voluntary and does not amount to legally valid consent); *United States v. Hoog*, 504 F.2d 45, 51 (8th Cir.1974) (kidnapping victim who accepted a ride from someone who misled her into believing that she would be taken to her desired destination was "inveigled" or "decoyed" within the meaning of the federal kidnapping statute).[8]

Here, the undisputed evidence of record is that Snipes was successfully lured into the woods for the alleged purpose of murdering Doug Ferguson when, in fact, the sole purpose of Stokes, Syphrette and Martin was to murder Snipes. Accordingly, rather than negating the charge of kidnapping, the redacted portions of the statement simply bolster the State's claim that Snipes did not "voluntarily" accompany her assailants but, rather, was inveigled into the woods by them. *Cf. Ray v. State*, 330 S.C. 184, 498 S.E.2d 640 (1998) (inveigling victim into truck under false pretense that she was being taken to the hospital constituted kidnapping). We find the statement was properly redacted.

■■■ Moreover, even assuming *arguendo*, as Stokes claims, that the redacted portions of his statement were relevant to demonstrate the victim voluntarily accompanied them on the night of her murder, any error in the redaction is harmless. Both Stokes' letter and the testimony of Norris Martin amply demonstrate that Connie Snipes voluntarily went with Stokes and Syphrette to Branchville, and that she willingly walked into the woods with Martin and Stokes. Accordingly, the jury was well aware that she had accompanied them voluntarily, and Stokes has failed to demonstrate any prejudice from the redaction. *State v. Taylor*, 333 S.C. 159, 508 S.E.2d 870 (1999)(in order for this Court to reverse a case based on the erroneous exclusion of evidence, prejudice must be shown); *State v. Bell*, 302 S.C. 18, 393 S.E.2d 364 (1990).[9]

---

8. *Accord State v. Plath*, 281 S.C. 1, 17, 313 S.E.2d 619, 628 (1984)(finding jury could have found victim was inveigled and decoyed to her death)

9. To the extent Stokes sought admission of the redacted portions in order to demonstrate the victim's bad character, i.e., that she was willing to go along to participate in a murder, we find the evidence was

Finally, the redacted portions were not admissible under Rule 106, SCRE, which provides:

> When a writing, or recorded statement, or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part of any other writing or recorded statement **which ought in fairness to be considered contemporaneously** with it. (Emphasis supplied).

"Only that portion of the remainder of a statement which explains or clarifies the previously admitted portion should be introduced." *State v. Taylor,* 333 S.C. 159, 171, 508 S.E.2d 870, 876 (1998). *See also State v. Gay,* 343 S.C. 543, 541 S.E.2d 541 (2001).

■ Here, the redacted excerpts do not explain or clarify the previously admitted portions but, rather, would only have confused the jury as to the identity of Doug Ferguson. Accordingly, the redacted statements need not, in fairness to Stokes, have been admitted pursuant to Rule 106, SCRE. *Gay, supra.*

The trial court properly redacted the statement.

## 2. REFERENCES TO GOD

At sentencing, Stokes elected to exercise his statutory right to make a closing statement to the jury.[10] While addressing the jury, Stokes stated:

> In my statement I never denied my involvement but the statement I gave was truthful and I do have a conscience, that's one of the main reasons why I gave the statement. You know, I been in trouble before but nothing like this before so I felt I had to set the record straight. But I give one statement and I give a honest one, I didn't [sic] four or

---

properly excluded. *State v. Whipple,* 324 S.C. 43, 476 S.E.2d 683 (1996) (no error in refusing to admit evidence of victim's bad character where it did not tend to make more or less probable any issue at guilt phase of trial).

**10.** Pursuant to S.C.Code Ann. § 16–3–20(B) (1976), "[t]he State, the defendant, and his counsel are permitted to present arguments for or against the sentence to be imposed."

five, I give one. And I'm deeply sorry that any of it ever happened and I'm also sorry for the role that I played in it.

You know, I prayed and prayed and prayed and have asked God to forgive me—

At this point, the solicitor asked to approach the bench and Stokes continued, "But I'm asking for forgiveness." After a bench conference, Stokes continued,

Well, I would just like to say that I will forever be sorry for the role that I played in it and most of all I truly feel for the family and if I could turn back the hand of time none of this would have occurred and I wouldn't be standing before ya'll now pleading for my life. And once again, I truly would like to say that I'm sorry and wish that you could find it in your heart to forgive me for the role that I played in this.

I would like to discuss how——but I can't get into that because they say I can't get into it so I would like to say that I am truly sorry, I really am.

Counsel for Stokes then gave his closing in which he referred to Stokes' letter to police, which stated, "I will say this much, God is going to bless them and help them make it through this. Without a doubt, God is going to punish me for my part and there's no excuse because we all have choices in life...."

■ Stokes now asserts the trial court impermissibly limited the scope of his allocution under S.C.Code § 16–3–20(B) such that his death sentence should be reversed.[11] We disagree.

---

11. As the State points out, the statutory right of closing argument and the right of allocution are distinguishable. Technically, "allocution" refers to the common law practice of the court "formally inquir[ing] of the defendant whether he had anything to say why sentence and judgment should not be pronounced." *State v. Phillips*, 215 S.C. 314, 54 S.E.2d 901 (1949); *State v. Trezevant*, 20 S.C. 363, (1884); *see also* BLACK'S LAW DICTIONARY 40 (5 th Ed.1979) (defining "allocution" as "formality of court's inquiry of prisoner as to whether he has any legal cause to show why judgment should not be pronounced against him on verdict of conviction"). *See also Bassett v. Commonwealth*, 222 Va. 844, 284 S.E.2d 844 (1981) (Allocution is the defendant's right to speak on his own behalf after the fact finder determines guilt but before the judge pronounces sentence. Defendant's closing argument is not allocution, but is his opportunity to present arguments in mitigation before the fact finder deliberates).

Stokes did assert before the jury that he had prayed and prayed and asked God to forgive him. Since Stokes made the point he intended to make, there is no reversible error. *State v. Bennett,* 328 S.C. 251, 493 S.E.2d 845 (1997) (capital defendant was not prejudiced by sustained objection to his religious argument where record indicates he made argument); *State v. Torrence,* 305 S.C. 45, 406 S.E.2d 315 (1991) (no prejudice resultant from trial court's ruling where witness is able to make point before the jury); *State v. McDowell,* 266 S.C. 508, 224 S.E.2d 889 (1976) (trial court's limitation of argument to jury did not deprive defendant's ability to make point). Accordingly, Stokes failed to demonstrate prejudice from the trial court's ruling.[12]

## CONCLUSION

Stokes' convictions and sentences are affirmed. Imposition of the death penalty in this case was not the result of passion, prejudice, or any other arbitrary factor, and the evidence supports the aggravating circumstances. The death sentence is not excessive or disproportionate to the penalty imposed in similar cases. S.C.Code Ann. § 16-3-25(C) (1985); *State v. Terry,* 339 S.C. 352, 529 S.E.2d 274, *cert. denied,* 531 U.S. 882, 121 S.Ct. 197, 148 L.Ed.2d 137 (2000); *State v. Johnson,* 338 S.C. 114, 525 S.E.2d 519, *cert. denied,* 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000); *State v. Southerland,* 316 S.C. 377, 447 S.E.2d 862, (1994), *cert. denied,* 513 U.S. 1166, 115 S.Ct. 1136, 130 L.Ed.2d 1096 (1995); *State v. Charping,* 333 S.C. 124, 508 S.E.2d 851, *cert. denied,* 527 U.S. 1007, 119 S.Ct. 2345, 144 L.Ed.2d 241 (1999).

**AFFIRMED.**

TOAL, C.J., BURNETT and PLEICONES, JJ., and Acting Justice JOHN C. FEW, concur.

---

12. We have consistently held there is no fundamental unfairness when the trial judge precludes the solicitor and the defense from arguing about God or religion. *State v. Shafer,* 340 S.C. 291, 531 S.E.2d 524, *cert. granted in part, Shafer v. South Carolina,* 530 U.S. 1306, 121 S.Ct. 30, 147 L.Ed.2d 1053 (2000); *State v. Patterson,* 324 S.C. 5, 482 S.E.2d 760, *cert. denied,* 522 U.S. 853, 118 S.Ct. 146, 139 L.Ed.2d 92 (1997).