THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State, Respondent,
v.
Cornelius Keith, Appellant.
 
 
 

Appeal From Sumter County
 Howard P. King, Circuit Court Judge

Unpublished Opinion No. 2006-UP-301
Heard April 6, 2006  Filed June 30, 2006

AFFIRMED

 
 
 
Assistant Appellate Defender Robert M. Dudek, Office of Appellate Defense, of Columbia, for Appellant.
Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Deborah R. J. Shupe, Office of the Attorney General, all of Columbia; and Solicitor Cecil Kelly Jackson, of Sumter, for Respondent.
 
 
 

PER CURIAM:  Cornelius Keith appeals his conviction for kidnapping.  He argues the circuit court erred in admitting evidence of prior bad acts and in denying his motion for directed verdict.  We affirm.   
FACTS
 On June 13, 2003, three days after her husbands suicide, Tammy Atkinson received a phone call from a man who identified himself as Mr. Pinckney.  The caller, later identified as Keith, told Atkinson he knew her husband and referred to her husbands family members by name.  Keith further informed Atkinson that her husband had helped him out when he was in trouble, and now he wanted to provide financial support for her. 
 Keith asked Atkinson to come to his home in Sumter so that she could meet his family and be presented with a check.  Keith told Atkinson that he wanted to give her some financial help after her husbands death. Atkinson went to Sumter, and after calling Keith from a convenient store as he had requested, she was invited to come across the street to his apartment.  Atkinson drove over to Keiths apartment and observed him standing in his doorway waving to her.
 Atkinson entered the apartment and stood by the open door.  Keith immediately began walking in and out of rooms in the apartment as he asked Atkinson questions regarding her knowledge of other local families.  Atkinson could hear Keith opening and closing drawers in another room, and she walked away from the open door into the apartment in an attempt to see him.  When Atkinson turned back around to face the open door, she observed Keith close and lock the door.  Atkinson immediately announced, Im out of here, rushed to the door which she unlocked and opened, and exited the apartment. 
 Keith never threatened Atkinson or told her she could not leave.  Atkinson admitted that Keith was close enough to grab her when she was opening the door and exiting the apartment, but he never attempted to grab her or hinder her ability to leave.  Keith never made any physical contact with Atkinson, and after she exited the apartment, he stood in the doorway and told her he would call her later.
 Atkinson drove to the police station and reported what had happened.  The police provided Atkinson with a photo line-up and she picked out Keith as the man she had just seen.[1]  The police then drove to Keiths apartment and placed him under arrest.
 After transporting Keith to the police station, the police attained a search warrant for his apartment.  The police executed the warrant and found a notebook in a dresser drawer.  In the notebook were written entries containing names and ages of deceased men and contact information for their family members.  The police were later able to match the information in the notebook with newspaper obituaries found in Keiths apartment which contained the same information.  Additionally, the police found a newspaper in the trash that contained Atkinsons husbands obituary. 
 At trial, the State produced two witnesses to testify regarding phone calls they had received from a man who identified himself as Mr. Pinckney.  At the time of the phone calls, both witnesses were recently widowed, and they were each listed in entries written in the notebook found in Keiths apartment.  The two women testified that the caller told them he knew their husbands and that he wanted to help them financially.  Neither woman ever agreed to the callers request to meet nor did they ever receive a check from him.
 A Sumter County grand jury indicted Keith on a single count of statutory kidnapping by inveiglement or decoy.  After trial, the jury convicted Keith of kidnapping, and the trial court sentenced him to ten years imprisonment.  This appeal followed.    
 LAW/ANALYSIS 
 I.  Admission of Evidence
 Keith contends the trial court erred in admitting evidence of prior bad acts in violation of State v. Lyle[2] and Rules 403 and 404(b), SCRE.  We disagree.
 In criminal cases, the appellate court sits to review errors of law only.  State v. Wilson, 345 S.C. 1, 5, 545 S.E.2d 827, 829 (2001).  On appeal, we are limited to determining whether the trial judge abused his discretion.  State v. Bowie, 360 S.C. 210, 216, 600 S.E.2d 112, 115 (Ct. App. 2004).  An abuse of discretion occurs when the trial courts ruling is based on an error of law.  State v. Foster, 354 S.C. 614, 621, 582 S.E.2d 426, 429 (2003).  This Court does not reassess the facts based on its own view of the preponderance of the evidence but simply determines whether any evidence supports the trial judges ruling.  Wilson, 345 S.C. at 6, 545 S.E.2d at 829.
 A.  Rule 404(b)
 South Carolina Rule of Evidence 404(b) states:  

 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent.

 We note that Rule 404(b), SCRE, differs from the federal rule of evidence.  [U]nlike the federal rule, which does not limit the purposes for which evidence of other crimes may be admitted, the South Carolina rule limits the use of evidence of other crimes, wrongs, or acts to those enumerated in State v. Lyle, 125 S.C. 406, 118 S.E. 803 (1923).  Rule 404(b), SCRE, Advisory Committee Notes.  This incorporation of Lyle into the South Carolina rule renders differentiation between a prior bad acts admissibility under Lyle and its admissibility under Rule 404(b), SCRE, unnecessary to our analysis.
 The State presented two witnesses who testified that they had received phone calls that were virtually identical to the call Atkinson received from Keith.  Keith objected to the admission of this testimony as inadmissible prior bad acts.   The State maintained it was entering the evidence to show Keiths common plan or scheme. 
 To determine the admissibility of evidence to show a common plan or scheme by the defendant, the court must determine whether the particular conduct circumstantially tends to prove the design or plan.  State v. Bell, 302 S.C. 18, 28, 393 S.E.2d 364, 370 (1990).     The connection between the prior bad act and the crime being tried must be more than just a general similarity.  State v. Cutro, 332 S.C. 100, 103, 504 S.E.2d 324, 325 (1998).  The acid test of admissibility is the logical relevancy of the other crimes.  Id.
 In his analysis of this issue, the trial judge compiled a spreadsheet to illustrate the connection between Keiths prior bad acts and the alleged kidnapping.  The link between the phone calls made to the two testifying widows and the phone call made to Atkinson can be seen: all three calls came within days of the deaths of the womens husbands; in each case the caller identified himself either as Mr. Pinckney or a relative of Bill Pinckney; the reason given for each of the calls was to offer financial support to the widow; and during each call, the caller attempted to set up a meeting with the widow.  The trial judge effectively illustrated the connection between the phone calls in terms of the time of the call, the identity of the caller, the reason for the call, and the request for a meeting.  We find this evidence provides a sufficient connection between the prior bad acts and the current crime and circumstantially tends to prove a common plan or scheme.
 Establishing a sufficient connection between the prior bad acts and the current crime does not end our analysis.  To be admissible, proof of prior bad acts must be clear and convincing.  State v. Smith, 300 S.C. 216, 218, 387 S.E.2d 245, 247 (1989).  However, our standard of review on appeal of these matters is limited.

 [W]e do not review a trial judges ruling on the admissibility of other bad acts by determining de novo whether the evidence rises to the level of clear and convincing.  If there is any evidence to support the admission of the bad act evidence, the trial judges ruling will not be disturbed on appeal.

 State v. Wilson, 345 S.C. 1, 6, 545 S.E.2d 827, 829 (2001).
 There is certainly some circumstantial evidence in the record on which the trial judge could have based his decision.  Under this any evidence standard, we affirm the trial courts admission of this testimony regarding prior bad acts.
 B.  Rule 403, SCRE
 Keith further contends the above noted testimony and the notebook found in the search of his home should have been excluded under Rule 403, SCRE.  We disagree.
 South Carolina Rule of Evidence 403 states: Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
 Prejudice must be determined based on the entire record and the result will generally turn on the facts of each case.  Wilson, 345 S.C. at 7, 545 S.E.2d at 830.  A trial judges decision regarding the comparative probative value and prejudicial effect of evidence should be reversed only in exceptional circumstances.  State v. McLeod, 362 S.C. 73, 81, 606 S.E.2d 215, 220 (Ct. App. 2004).  We review a trial judges decision regarding
 Rule 403 pursuant to the abuse of discretion standard and are obligated to give great deference to the trial courts judgment.  State v. Horton, 359 S.C. 555, 569, 598 S.E.2d 279, 286 (Ct. App. 2004).  
 In light of the States reliance on circumstantial evidence to prove decoy or inveiglement, we find the witnesses testimony and the notebook to be especially probative.  We do not find that exceptional circumstances exist to reverse the trial courts admission of the testimony or the notebook.  We find no abuse of discretion by the trial court because this evidence was more probative than it was prejudicial.  
 II.  Directed Verdict
 Keith contends the trial court erred in denying his motion for directed verdict.  Keith maintains that he neither kidnapped Atkinson, nor committed any illegal act.  We disagree.  
 When ruling on a motion for a directed verdict, the trial court is concerned with the existence or nonexistence of evidence, not its weight.  State v. Cherry, 361 S.C. 588, 593, 606 S.E.2d 475, 477-78 (2004).  When reviewing a denial of a directed verdict, this Court must view the evidence and all reasonable inferences in the light most favorable to the state.  State v. Burdette, 335 S.C. 34, 46, 515 S.E.2d 525, 531 (1999). If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, an appellate court must find the case was properly submitted to the jury.  Cherry, 361 S.C. at 593-94, 606 S.E.2d at 478. See State v. Gaster, 349 S.C. 545, 564 S.E.2d 87 (2002) (on an appeal from trial courts denial of a motion for a directed verdict, appellate court may only reverse the trial court if there is no evidence to support the trial courts ruling).
 South Carolinas kidnapping statute requires proof of an unlawful act taking one of several alternative forms, including seizure, confinement, inveiglement, decoy, kidnapping, abduction, or carrying away.  State v. East, 353 S.C. 634, 637, 578 S.E.2d 748, 750 (Ct. App. 2003).  Section 16-3-910 of the South Carolina Code (Supp. 2005) states:

 Whoever shall unlawfully seize, confine, inveigle, decoy, kidnap, abduct or carry away any other person by any means whatsoever without authority of law, except when a minor is seized or taken by his parent, is guilty of a felony and, upon conviction, must be imprisoned for a period not to exceed thirty years unless sentenced for murder as provided in Section 16-3-20. 

 Under the interpretation of the statute set out in East, the act of inveigling or decoying alone satisfy the unlawful act requirement for proof of statutory kidnapping.  Inveigling has been defined as enticing, cajoling, or tempting the victim, usually through some deceitful means such as false promises, and decoy is defined as to lure successfully.  State v. Stokes, 345 S.C. 368, 373, 548 S.E.2d 202, 204 (2001) (citing United States v. Macklin, 671 F.2d 60, 66 (2d Cir. 1982) and New Websters Dictionary and Thesaurus 250 (1993)).
 In this case, the State presented evidence that would allow a reasonable jury to find Keith inveigled or decoyed Atkinson into traveling to and entering his apartment.  The State presented Atkinsons testimony of the events surrounding her phone conversation and meeting with Keith and the testimony of two other witnesses who had received virtually identical phone calls.  None of the women ever received any financial assistance.  Also, the State presented the notebook found in Keiths apartment that contained information about several deceased men and their families.  Thus, we find sufficient evidence was presented to support a finding of inveigling or decoy.     
 In addition to proving a defendant has violated the kidnapping statute, the State has the burden of proving that the statute was violated knowingly. State v. Jefferies, 316 S.C. 13, 19, 446 S.E.2d 427, 430-31 (1994).  There was certainly some circumstantial evidence in the form of the testimony regarding previous phone calls to other women and the notebook found in Keiths home that could reasonably show Keith knew he was inveigling or decoying Atkinson.
 In response, Keith argues that Atkinson came to his home voluntarily.  However, the fact that one is inveigled or decoyed into going somewhere negates, in legal contemplation, the voluntariness of his or her participation.  Stokes, 345 S.C. at 373, 548 S.E.2d at 204.  If Keith lured Atkinson to his home under the false pretense that she was to receive financial assistance, then her voluntariness would be negated.  Furthermore, the fact that Keith locked the door after Atkinson entered his apartment casts doubt on his claim that she was there voluntarily.   
 In summary, Keiths alleged actions of luring Atkinson to his home under false pretenses qualifies as inveiglement or decoy and negates her voluntariness.  The inveiglement or decoy alone has been interpreted as meeting the necessary requirement of an unlawful act, and there was some circumstantial evidence to submit to the jury that could show Keith knowingly inveigled or decoyed Atkinson.  Therefore, we find there was evidence to support the trial courts denial of Keiths directed verdict motion.
 AFFIRMED.
 BEATTY, SHORT, and WILLIAMS, JJ., concur.

[1] The police had a photo of Keith on file because of his prior criminal conduct.  Keith has an extensive criminal record including a 2002 conviction for criminal sexual conduct in the third degree.
[2] State v. Lyle, 125 S.C. 406, 118 S.E. 803 (1923).